## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| JESSICA PAINTER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | **JURY DEMANDED** |
| COREPOWER YOGA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Jessica Painter, by and through her attorneys, states as follows for her complaint against Defendant CorePower Yoga, LLC:

### INTRODUCTION

1. On June 13, 2020, Ms. Painter was sexually assaulted by a regular and frequent CorePower student ("Mr. Rice") who had developed a well-known reputation for engaging in sexually harassing and inappropriate behavior towards CorePower employees.

2. Specifically, on June 13, 2020, Mr. Rice forced Ms. Painter up against a wall, unzipped her jacket, ran his hand under her tank top, before snapping the strap of her tank top while grunting.

3. Following this traumatic incident, Ms. Painter lodged a formal report to her manager, but for weeks, Ms. Painter's complaint was entirely ignored by CorePower.

4. While CorePower did nothing, Mr. Rice continued to take Ms. Painter's yoga classes three times per week, forcing Ms. Painter to regularly interact with her assailant who continued to harass her and caused her to fear for her physical safety to such an extent that she enlisted her husband to sit outside her classes to provide the protection that CorePower failed to provide.

5. During this time, Ms. Painter was forced to endure continuing sexual harassment that CorePower was aware of and acquiesced to.

6. Weeks later, CorePower acknowledged that their response was inexcusably slow, insufficient, and finally opened an "investigation" that merely consisted of interviewing Mr. Rice but no other witnesses.

7. At the conclusion of their investigation, CorePower allowed Mr. Rice to keep his CorePower membership and continued to allow him to take classes at CorePower studios at which Ms. Painter taught and took classes.

8. On July 17, 2020, Ms. Painter informed CorePower that their woeful response to her sexual assault had placed her in physical danger, caused her great mental anguish, and that her employment at CorePower had become so unbearable that she had no choice but to leave the job she previously loved.

## JURISDICTION AND VENUE

9. On December 9, 2020, Ms. Painter filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division.

10. A "right to sue letter" was issued to Plaintiff by the United States Department of Justice, Civil Rights Division, on July 21, 2021.

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this is an action arising under 42 U.S.C. § 2000e.

12. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims providing the basis for federal subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13. This Court has personal jurisdiction over the Defendant because their headquarters and principal place of business is in Colorado.

14. Venue is proper in this jurisdiction under 42 U.S.C. § 2000e-5(f)(3) because CorePower's unlawful employment practice was committed in this judicial district, and the employment records relevant to their unlawful practices are maintained and administered in this judicial district. Alternatively, CorePower's principal office is within this judicial district.

## PARTIES

15. Ms. Painter is a former female employee of CorePower.

16. During the relevant period, Ms. Painter was employed by CorePower as an instructor.

17. CorePower is a Colorado corporation that operates approximately 170 studios nationwide.

18. CorePower's headquarters and principal office is located in Denver, CO.

19. CorePower's human resources department operates out of its headquarters and principal office in Denver, CO.

20. CorePower's headquarters and principal office in Denver, CO is responsible for making all relevant employment decisions and taking necessary actions relating to reports of sexual harassment and resulting investigations.

21. CorePower's headquarters and principal office in Denver, CO maintains and administers relevant employment records, including individual instructor employment records, manager employment records, employee handbooks, discrimination and sexual harassment policies, and discrimination and sexual harassment investigation materials.

22. CorePower is an employer as defined by Title VII of the Civil Rights Act of 1964 and was, at all times relevant to this complaint, Ms. Painter's employer.

23. At all times relevant to the complaint, Mr. Rice was a regular client at the Ponce City, Atlanta, Georgia CorePower Studio – the same studio at which he assaulted Ms. Painter.

24. At all times relevant to the complaint, CorePower, including management level employees, knew that Mr. Rice had a reputation for engaging in sexually harassing and inappropriate behavior towards CorePower employees.

## BACKGROUND

### I. CorePower's Recognition of Sexual Misconduct in the Employment Setting

25. CorePower is well aware of the prevalence and reality of sexual harassment in the workplace.

26. Indeed, CorePower's own Sexual Harassment Policy purports to "not tolerate and prohibits . . . harassment . . . against [its] . . . employees by **another customer, or any third party**, . . . on the basis of . . . sex or gender . . . or sexual orientation."

27. CorePower further states that they are "committed to a workplace free of discrimination, harassment and retaliation" and that their "management team is dedicated to ensuring the fulfillment of this policy."

28. CorePower's own Sexual Harassment Policy defines sexual harassment as any: "unwelcome . . . physical conduct creating an intimidating, offensive, or hostile work environment that interferes with work performance. Harassment can be . . . verbal . . . or physical conduct (including physically threatening another, blocking someone's way, etc.) that denigrates or shows hostility or aversion towards an individual because of any protected characteristic."

29. CorePower further defines sexual harassment to include "unwelcome or unsolicited sexual advances . . . requests for sexual favors, conversations regarding sexual activities and other verbal or physical conduct of a sexual nature . . . Examples of conduct that violates this policy include:

4

unwelcome sexual advances, flirtations, advances, leering, whistling, touching, pinching, assault, blocking normal movement. . . . obscene or vulgar gestures, posters, or comments . . . uninvited touching of a sexual nature . . . conduct or comments consistently targeted at only one gender, even if the content is not sexual."

30. CorePower further states that "all . . . harassment . . . is unacceptable in the workplace and in any work-related settings . . . regardless of whether the conduct is engaged in by a supervisor, co-worker, **client**, **customer**, vendor, or other third party."

31. When sexual harassment complaints are made, supervisors "<u>must immediately</u> report the issues raised to the Senior Director of Human Resources," and that CorePower will "**promptly** conduct a fair and thorough investigation into the facts and circumstances of any claim."[1]

32. As set forth below, CorePower failed to adhere to their very own policies, resulting in damages that Ms. Painter is still dealing with to this day.

## II.  Factual Background

33. In April 2017, Ms. Painter received her CorePower teaching certification in Raleigh, North Carolina.

34. In May 2017, Ms. Painter began teaching as an instructor at CorePower studios in and around the Atlanta, Georgia area.

35. Throughout her employment at CorePower, Ms. Painter was recognized as an exemplary employee who received positive reviews.

36. On or around June 13, 2020, Ms. Painter was employed as a CorePower instructor with the Ponce City Studio in Atlanta, GA serving as her primary studio.

---

[1] During all relevant times, CorePower's Senior Director of Human Resources was employed out of CorePower's headquarters and principal office in Denver, CO.

5

37. On or around June 13, 2020, Mr. Rice was a regular student at the Ponce City Studio in Atlanta, GA.

### A. CorePower's prior knowledge that Ms. Painter's assailant had a history of engaging in sexually harassing and inappropriate behavior.

38. As a regular at CorePower's Ponce City Market studio in Atlanta, Georgia ("Ponce City Studio"), Mr. Rice developed a reputation for being "creepy" and as someone who was likely to engage in inappropriate behavior including, touching, intimidating, and generally making female instructors feel uncomfortable.

39. For instance, in 2019 a female instructor (not Ms. Painter) reported to the Ponce City Studio Manager an incident in which Mr. Rice inappropriately, and without permission, grabbed the instructor's hand in a sexually suggestive manner during class. No actions were taken by CorePower in response to this report.

40. Multiple female CorePower instructors personally experienced instances of Mr. Rice engaging in inappropriate and unwanted touching.

41. Mr. Rice regularly referred to female instructors by sexually derogatory names.

42. Mr. Rice would regularly comment on instructors' bodies and make comments such as "I couldn't stop staring at you."

43. Mr. Rice was known as a "lingerer" who regularly dawdled in the locker room to ensure that he was the last student and alone with female instructors who were required to wait for him to leave the studio.

44. Mr. Rice's "lingering" practice regularly made female CorePower instructors feel uncomfortable such that on occasions when instructors knew that Mr. Rice was taking class and was likely to attempt to manufacture alone time with a female instructor by lingering in the locker room,

6

co-workers would remain at the studio after their shifts to make sure their female co-worker was not left alone with Mr. Rice.

45. Management level CorePower employees were well aware of this reputation and were required to immediately report Mr. Rice's actions to CorePower's Senior Director of Human Resources in Denver, CO.

46. CorePower's headquarters and principal office in Denver, CO had actual and/or constructive knowledge of Mr. Rice's history.

47. CorePower's headquarters and principal office in Denver, CO maintained and administered records related to Mr. Rice's history.

48. CorePower failed to take any actions to protect its female employees from Mr. Rice, despite the fact that he had already demonstrated himself capable of and willing to violate CorePower's sexual harassment policy by engaging in unwanted "verbal [and] physical conduct of a sexual nature" towards female instructors.

**B.  Ms. Painter is sexually assaulted by Mr. Rice**

49. On June 13, 2020, Ms. Painter taught her regular 60 minute 10:00 a.m. Yoga Sculpt class at the Ponce City Studio.

50. Approximately five students took Ms. Painter's class that morning, including Mr. Rice.

51. By around 11:15 a.m., all other students had left the Ponce City Studio leaving Ms. Painter alone in the building with Mr. Rice.

52. At said time, Ms. Painter was walking past Mr. Rice in the Ponce City Studio when Mr. Rice suddenly cornered Ms. Painter, forced her up against a wall, unzipped her jacket, ran his hand under her tank top, before snapping the strap of her tank top while grunting.

7

53. Ms. Painter was able to break free from Mr. Rice's grasp, zipped up her jacket, and fled his presence.

### C. CorePower's failed response to Ms. Painter's sexual assault

54. Thereafter, Ms. Painter met with the Ponce City studio manager ("Manager") to discuss the assault.

55. Immediately after their meeting, Mr. Rice showed up at the Ponce City Studio to take Ms. Painter's class.

56. Despite learning of the assault just moments ago, Ms. Painter's Manager *allowed* Mr. Rice to take Ms. Painter's class without question and without so much as raising the issue with Mr. Rice.

57. Despite learning of the assault just moments ago and checking Mr. Rice into Ms. Painter's class, the Manager left the studio abandoning Ms. Painter and leaving her *alone* with her assailant.

58. Ms. Painter was terrified.

59. Rather than leaving Ms. Painter alone with her assailant, the Manager was required to immediately report Mr. Rice's actions to CorePower's Senior Director of Human Resources in Denver, CO.

60. Ms. Painter did not, however, hear anything from CorePower's principal office.

61. Moreover, Ms. Painter did not hear from her Manager until the next day when Ms. Painter disclosed to her Manager that the assault had caused her to fear for her personal safety.

62. The Manager assured Ms. Painter that she would report the incident to CorePower's principal office in Denver, CO, and that CorePower's principal office would follow-up.

63. CorePower's principal office, however, did not follow-up.

8

64. In fact, over the following weeks, CorePower's principal office entirely failed to respond to Ms. Painter's report.

65. Throughout this period, Mr. Rice continued to attend Ms. Painter's classes approximately three-times per week.

66. As a result, Ms. Painter was living in a constant state of terror.

67. In fact, Ms. Painter was so scared that she asked her Manager if her husband could sit in the studio lobby while she taught class (to Mr. Rice) as a form of protection.

68. In response, the Manager told Ms. Painter it was fine so long as *her husband* "didn't start a fight."

69. Ms. Painter also attempted to ward off additional harassments and assaults from Mr. Rice by wearing baggy clothes, covering up her body, and staying behind the front desk as much as possible.

70. Despite these efforts, Mr. Rice continued to sexually harass Ms. Painter by inappropriately staring at Ms. Painter throughout class, licking his lips, and referring to her by sexually derogatory names.

71. On July 2, 2020, Ms. Painter emailed CorePower's Human Resources Department in Denver, CO, complaining that after nearly three weeks "nothing [had] been done . . . no one [had] checked in with her, no solution had been provided, [the] student [was] still allowed to come to [CorePower], and he continue[d] to take [her] classes."

72. Ms. Painter further explained how "disappointing, disheartening, and disgusting [CorePower's lack of a response felt] and how difficult it [was] for [her] to walk into that studio and teach with no support from leadership."

9

73. Ms. Painter directly advised CorePower's Human Resources Department in Denver, CO that she was forced to have her husband go to the studio to provide her "only protection."

74. In response, CorePower's Human Resources Department in Denver, CO apologized, accepted full responsibility for their failures and admitted that there was "no excuse."

75. On July 6, CorePower's Human Resources Department in Denver, CO initiated an investigation and interviewed Mr. Rice who denied Ms. Painter's allegations. However, Ms. Painter was assured by CorePower's Human Resources Department in Denver, CO that they were leaning towards banning Mr. Rice from all CorePower studios.

76. On July 9, without interviewing any other witnesses about Mr. Rice's history of sexually harassing behavior, CorePower's Human Resources Department in Denver, CO informed Ms. Painter that they had reached a decision and were permitting Mr. Rice to continue attending classes at CorePower studios, including Atlanta area studios where Ms. Painter taught.

77. Ms. Painter told CorePower that she was disturbed by their decision not to ban Mr. Rice from all studios as Ms. Painter would not be able to teach or take classes at CorePower studios she frequents without risking her physical safety by encountering her assailant.

78. On July 17, Ms. Painter again disclosed her severe disappointment regarding CorePower's handling of her sexual assault, including:

    a. her Manager knowingly leaving her alone with her assailant *after* learning of the assault;

    b. her Manager never so much as checking in on her;

    c. CorePower's principal office leaving her alone with no support and forcing her to continue teaching classes to her assailant for weeks;

    d. CorePower's principal office's weeks long failure to even start an investigation; and

   e. CorePower's principal office ultimately siding with her assailant – not her, the victim and CorePower's employee – by refusing to revoke his membership.

79. As a result, Ms. Painter's working conditions became intolerable, and her working conditions had become so difficult that she was forced to resign, constituting constructive discharge.

## COUNT I
### Title VII, 42 U.S.C. §2000e, et seq.
### Sexual Discrimination, Harassment, and Hostile Work Environment Claim

80. Each of the foregoing paragraphs are incorporated herein as if fully restated.

81. Ms. Painter is a female and is therefore a member of a protected class.

82. CorePower management level employees knew, or in the exercise of reasonable care should have known, that Ms. Painter was being discriminated against and sexually harassed based on her gender.

83. CorePower management level employees knew, or in the exercise of reasonable care should have known, that the discrimination and sexual harassment towards Ms. Painter was unique to Ms. Painter.

84. CorePower management level employees knew, or in the exercise of reasonable care should have known, that the discrimination and sexual harassment towards Ms. Painter subjected Ms. Painter to a hostile work environment.

85. CorePower and its agents' response to the discrimination and sexual harassment towards Ms. Painter created, condoned, and/or acquiesced to the hostile work environment Ms. Painter was subjected to.

86. CorePower management level employees knew, or in the exercise of reasonable care should have known, of the sexual discrimination, sexual harassment, and hostile work environment

Ms. Painter was subjected to but failed to remedy or prevent the hostile and offensive work environment.

87. CorePower committed an unlawful employment practice when its management level employees knew, or in the exercise of reasonable care should have known, that Ms. Painter was being subjected to sexual discrimination, harassment, and a hostile work environment, but failed to remedy or prevent said conduct.

88. CorePower and its agents' willfully and intentionally subjected Ms. Painter to sexual discrimination, sexual harassment, and a hostile work environment.

89. The actions of CorePower and its agents permeated Ms. Painter's workplace with sexual discrimination, intimidation, and harassment that was sufficiently severe or pervasive and regular to alter the conditions of Ms. Painter's employment and create an abusive working environment.

90. The sexual discrimination, harassment, and hostile work environment Ms. Painter was subjected to was objectively offensive.

91. The sexual discrimination, harassment, and hostile work environment Ms. Painter was subjected to subjectively offensive.

92. The sexual discrimination, harassment, and hostile work environment Ms. Painter was subjected to was such that a reasonable person would find hostile or abusive, and one that Ms. Painter in fact did perceive to be so.

93. CorePower's conduct had the purpose or effect of creating an intimidating, hostile, and offensive environment.

94. CorePower and its agents' conduct created, condoned, and/or acquiesced to a continuing course of sexual discrimination, harassment, and a hostile work environment towards Ms. Painter.

95. CorePower knew its actions violated Title VII or it was recklessly indifferent in that regard.

96. As a direct result of the sexual harassment she suffered, and in light of CorePower and its agents' conduct and gross mishandling of the situation, Ms. Painter's working conditions became so intolerable and unbearable that a reasonable person in her position would have had no other reasonable choice than to resign.

97. Ms. Painter was constructively discharged due to the sexual discrimination, harassment, and hostile work environment to which she was subjected.

98. CorePower, therefore, denied Ms. Painter her rights under the Civil Rights Act of 1954 and she has suffered damages as a direct result of her rights being violated.

99. As a direct and proximate result of the foregoing, Ms. Painter has suffered, and will continue to suffer, damages including, but not limited to, loss of front and back wages, earnings, benefits, insurance premiums, emotional distress, health care costs and expenses, and other damages to be determined at trial. Ms. Painter claims compensatory damages for these losses and injuries under § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

## COUNT II
### Violation of the Colorado Anti-Discrimination Act ("CADA"), C.R.S. §§ 24-34-401 et seq.
### Sex Discrimination and Harassment Based on Sex

100. Each of the foregoing paragraphs are incorporated herein as if fully restated.

101. CorePower and its agents subjected Ms. Painter to less favorable terms and conditions of employment based on her sex including, but not limited to:

   a. subjecting her to a sufficiently severe and pervasive work environment wherein she was sexually harassed by Mr. Rice so as to alter the conditions and terms of her employment;

  b. condoning or tolerating such harassment and failing to act to protect Ms. Painter after she reported the same;

  c. possessing actual and/or constructive knowledge that Ms. Painter was being subjected to sexual discrimination, harassment, and a hostile work environment, but failed to remedy or prevent said conduct; and

  d. creating, condoning, and/or acquiescing to a work environment so intolerable so as to constructively discharge Ms. Painter.

102. Ms. Painter registered complaints regarding the sexual harassment and hostile work environment with the appropriate authorities at CorePower.

103. Plaintiff's requests for protection from the severe and pervasive sexual harassment were ignored by CorePower and its agents.

104. Notwithstanding her pleas for help, Ms. Painter was required to subject herself during work hours to sexual harassment and a hostile work environment.

105. CorePower's above-described conduct constituted discrimination based on Ms. Painter's sex in violation of CADA.

106. Through its unlawful conduct, CorePower and its agents acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Ms. Painter's equal rights under the law, thereby necessitating the imposition of punitive damages.

107. As a direct and proximate result of CorePower and its agents' actions, Ms. Painter has suffered, and will continue to suffer, damages including, but not limited to, loss of front and back wages, earnings, benefits, insurance premiums, emotional distress, health care costs and expenses, and other damages to be determined at trial. Plaintiff claims special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

## COUNT III
### Intentional Infliction of Emotional Distress

108. Each of the foregoing paragraphs are incorporated herein as if fully restated.

109. The conduct of CorePower, its agents, employees, and assigns, as set out above, was extreme and outrageous conduct.

110. The conduct of CorePower, its agents, employees, and assigns, intentionally and/or recklessly caused Ms. Painter to suffer severe emotional distress so as to entitle her to recover punitive damages.

111. The conduct of CorePower, its agents, employees, and assigns, was the direct and proximate cause of the injuries and damages which Ms. Painter sustained.

112. CorePower, its agents, employees, and assigns owed Ms. Painter a duty of care to provide a safe, healthy, and accommodating workplace for Ms. Painter. The Defendant had a duty to abide by all statutes and laws which protect Ms. Painter from discrimination and disparate treatment in the workplace.

113. The conduct of CorePower, its agents, employees, and assigns constituted a direct and deliberate breach of its duty of care owed to Ms. Painter so as to entitle Ms. Painter to recover damages for her injuries, damages, and losses, including punitive damages.

114. The conduct of CorePower constitutes intentional infliction of emotional distress and outrageous conduct in direct dereliction of the duty of care owed to Ms. Painter.

115. The conduct of CorePower toward Ms. Painter constitutes wrongful constructive discharge so as to entitle Ms. Painter to recover for her injuries, damages, and losses.

116. As a direct and proximate result of CorePower's actions, Ms. Painter has suffered, and will continue to suffer damages, including punitive damages. Ms. Painter respectfully prays for

damages including punitive damages, together with attorney's fees and costs, interest, and such other and further relief as the Court shall consider appropriate under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a) Awarding lost wages, including lost fringe benefits;
(b) Awarding compensatory damages;
(c) Awarding punitive damages;
(d) Awarding the costs of this action, together with reasonable attorney's fees; and
(e) granting such other relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Date:   October 18, 2021                                  Respectfully Submitted,

                                                          JESSICA PAINTER

                                                          /s/      *Carter Grant*
                                                          One of the Attorneys for Plaintiff

Carter Grant
John Marrese
HART MCLAUGHLIN & ELDRIDGE, LLC
22 West Washington, #1600
Chicago, IL 60602
P. (312) 955-0545
F. (312) 971-9243
cgrant@hmelegal.com
jmarrese@hmelegal.com

16